UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENETRIA McGOWAN and
JARRETT ENGLISH,

       Plaintiffs,

v.

CITY OF MILWAUKEE, ALFONSO MORALES,
in his official capacity as Chief of Police, JAMES
HARPOLE, in his official capacity as Assistant Chief
of Police and in his individual capacity, POLICE
OFFICER LUKE KITTOCK, in his individual
capacity, POLICE OFFICER SALVADOR
HERNANDEZ, in his individual capacity, POLICE
SERGEANT RAYMOND BROCK, in his individual
capacity, POLICE OFFICER NESRODENE
GHASSOUL, in her individual capacity, POLICE
OFFICER ANDREW WILKIEWICZ, in his
individual capacity, UKNOWN MALE POLICE
SUPERVISOR, in his individual capacity, and
UNKNOWN FEMALE POLICE OFFICER, in her
individual capacity.

       Defendants.

Case No.

---

## COMPLAINT

---

Plaintiffs Benetria McGowan and Jarrett English, by their undersigned attorneys, hereby

allege as follows:

## NATURE OF ACTION

1.      This is a civil action brought pursuant to 42 U.S.C. § 1983. Plaintiffs seek damages

for injuries sustained by Plaintiffs as a result of Defendants' violations of their constitutional rights.

Plaintiffs also seek to enjoin the City of Milwaukee and Milwaukee Police Chief Alfonso Morales

from issuing and enforcing unlawful dispersal orders to peaceful observers and passersby based on alleged unlawful assembly or other group misconduct by others.

2.      This case arises from the Milwaukee Police Department's response to large protests in the Sherman Park neighborhood in the days and weeks following the fatal shooting of Sylville Smith by a Milwaukee police officer on August 13, 2016. While some individuals engaged in violent activities in the area during this time, many others were peaceful.

3.      On August 30, 2016, police arrested a number of people for alleged misconduct in connection with a crowd at the site of a memorial to Mr. Smith on West Auer Avenue, near North 44th Street. The police ordered the crowd to disperse and arrested those who refused to leave the scene.

4.      After restoring order in the area where the crowd had gathered, police officials deployed teams of mobile officers to make arrests of other people on the sidewalks in a broader area, including people who had not engaged in any criminal activity or even been part of the crowd at the memorial site.  Plaintiffs in this case had not been involved in the protests earlier in the evening, but were nonetheless ordered to disperse without cause and forcibly arrested without being given an opportunity to comply with the dispersal order, in violation of their Fourth Amendment rights to be free from unreasonable seizures and excessive force.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343(a)(3) (42 U.S.C. § 1983 jurisdiction), and 2201-2202 (declaratory judgment jurisdiction).

6.      The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claim arises within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## PARTIES

7.      Plaintiff Benetria McGowan is an adult resident of the State of Wisconsin residing in the City and County of Milwaukee.

8.      Plaintiff Jarrett English is an adult resident of the State of Wisconsin residing in the City and County of Milwaukee.

9.      Defendant City of Milwaukee is a Wisconsin municipality.

10.     Defendant Alfonso Morales is, on information and belief, an adult resident of the State of Wisconsin residing in Milwaukee County, within the Eastern District of Wisconsin. Defendant Morales is the Chief of the Milwaukee Police Department, and in that capacity has final responsibility for establishing the rules of engagement for police deployments responding to protests and civil unrest.  Chief Morales is named in his official capacity for declaratory and injunctive relief only.  At all times pertinent and material to this Complaint, Defendant Morales was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.

11.     Defendant James Harpole is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin.  At all times pertinent and material to this Complaint, Defendant Harpole was an Assistant Chief of Police with the Milwaukee Police Department and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin. Defendant Harpole was directing the police deployment in the Sherman Park area on August 30, 2016.

12.     Defendant Luke Kittock is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin.  At all times pertinent and material to this Complaint, Defendant Kittock is or was a Milwaukee Police

Officer and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin. Defendant Kittock unlawfully arrested Plaintiff McGowan on August 30, 2016.

13.     Defendant Salvador Hernandez is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, Defendant Hernandez is or was a Milwaukee Police Officer and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin. Defendant Hernandez was involved in the unlawful arrest of Plaintiff McGowan on August 30, 2016.

14.     Defendant Unnamed Female Police Officer is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, this unknown Defendant is or was a Milwaukee Police Officer and was acting within the scope of her employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin. This unknown Defendant unlawfully directed Plaintiff McGowan to disperse on August 30, 2016.

15.     Defendant Unnamed Male Police Supervisor is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, this unknown Defendant is or was a Milwaukee Police supervisory officer and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin. This unknown Defendant advised Plaintiff McGowan on August 30, 2016 that she was being arrested due to "unrest" or "unlawful assembly" in the area.

4

16.     Defendant Raymond Brock is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin.  At all times pertinent and material to this Complaint, Defendant Brock is or was a Milwaukee Police Sergeant and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.  Defendant Brock unlawfully ordered Plaintiff English to disperse, unlawfully directed that he be arrested, and participated in the unlawful arrest of and use of excessive force against Plaintiff English on August 30, 2016.

17.     Defendant Nesrodene Ghassoul is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, Defendant Ghassoul is or was a Milwaukee Police Officer and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.  Defendant Ghassoul participated in the unlawful arrest of and use of excessive force against Plaintiff English on August 30, 2016.

18.     Defendant Andrew Wilkiewicz is, on information and belief, an adult resident of the State of Wisconsin, residing in Milwaukee County, within the Eastern District of Wisconsin. At all times pertinent and material to this Complaint, Defendant Wilkiewicz is or was a Milwaukee Police Officer and was acting within the scope of his employment and under color of the statutes, ordinances, customs, policies and usages of the State of Wisconsin.  Defendant Wilkiewicz participated in the unlawful arrest of and use of excessive force against Plaintiff English on August 30, 2016.

## ALLEGATIONS OF FACT

19.     On August 13, 2016, a Milwaukee police officer shot and killed Sylville Smith in the vicinity of North 44th Street and West Auer Avenue in the Sherman Park neighborhood of Milwaukee.

20.     In response to the killing, community members engaged in protests against shootings by police. The protests were sometimes large, but were generally peaceful. Some people did engage in violence during the protests, including setting fire to a gas station on the night of the killing.

21.     After the early days, smaller protests continued, mostly at the site of a makeshift memorial on Auer Avenue near the site of the shooting. These demonstrations were largely peaceful, although some people disturbed neighbors at night and a few engaged in illegal acts.

22.     As of August 30, 2016, the demonstrations had generally become smaller and less frequent. On that day, however, possibly in response to rumors of planned police actions, a somewhat larger crowd gathered on Auer Avenue near North 44th Street.

23.     A large contingent of police officers deployed to the area. Defendant Harpole directed the police deployment.

24.     Police arrested a number of individuals at the site of the protest for various alleged crimes and ultimately declared an unlawful assembly, ordering people to disperse from the scene. Police arrested those who did not leave within approximately fifteen minutes of the order to disperse.

25.     After restoring order in the area where the crowd had gathered, police officials, including, on information and belief, Defendant Harpole, deployed teams of mobile officers to indiscriminately make arrests of other people on the sidewalks in a broader area, including people who had not engaged in any criminal activity or even been part of the crowd at the memorial site.

6

On information and belief, Defendant Harpole followed the regular practice of the Milwaukee Police Department in directing arrests on the pretext of disorderly conduct simply to disperse citizens lawfully protesting or assembling.

26.     On information and belief, the Police Chief, Defendant Morales, was aware of the pervasive practice and custom of MPD officers using arrest authority as a means to disperse crowds lawfully assembling.

27.     Later in the evening, Plaintiff Jarrett English learned of the police action from Jonathan Brostoff, a state representative, on Facebook while driving to the home of a family member.  He decided to stop on his way to observe the police.  He parked his car and arrived on foot at the northeast corner of Sherman Boulevard and West Auer Avenue, where Rep. Brostoff and a few other people had gathered to watch what was happening on Auer Avenue across Sherman Boulevard.

28.     Sherman Boulevard is a major thoroughfare, about 30 yards across, with two lanes of traffic and a parking lane in both directions, separated by a broad median. Auer Avenue is a smaller residential street.  Police had closed traffic on Auer Avenue, but Sherman Boulevard was open in both directions at the time Mr. English arrived.

29.     There was a large police presence on the west side of Sherman Boulevard, with cars and officers deployed around Auer.  Mr. English did not see any police officers or vehicles on the east side of Sherman, where he was standing.  He did not hear any police orders to disperse or any other announcements from the other side of Sherman Boulevard.

30.     A short time after his arrival, a Milwaukee Police Department van pulled up near the corner where Mr. English was standing.

Case 2:19-cv-00781-WED   Filed 05/24/19   Page 7 of 13   Document 1

31.     A number of officers in riot gear exited the vehicle and advanced toward Mr. English and the others standing on the corner.

32.     Defendant Brock was in charge of the officers in the vehicle. He understood his orders to be to make arrests of persons at the location.  He intended to make two arrests as a show of force to encourage any remaining people to disperse.

33.     Upon exiting the police van, Defendant Brock ordered everyone to disperse and very shortly thereafter directed officers to arrest Plaintiff English, who had walked across Auer Avenue after the dispersal order and was observing the police activities across the street.

34.     Defendants Brock, Wilkiewicz and Ghassoul pursued Mr. English across Auer Avenue, arrested him, took him to the ground, and handcuffed him behind his back with plastic zip-ties.

35.     Mr. English was frightened by the actions of the officers and worried about what they would do with him.

36.      Officers escorted him in handcuffs to a waiting paddy wagon, where he was detained along with Rep. Brostoff, who had also been arrested.

37.     After approximately twenty minutes in custody, Milwaukee Police Inspector Michael Brunson had Mr. English and Rep. Brostoff released, saying, in substance, "We'll just call this a misunderstanding." Police did not issue a citation to or otherwise charge Mr. English with violating the law.

38.     Mr. English suffered physical discomfort, including soreness from having his arms behind his back, and significant emotional distress, including fear about where he would be taken and what would be done to him, from his unlawful arrest and detention.

39.     In the evening of August 30, 2016, Plaintiff Benetria McGowan had planned to stop briefly at the memorial on West Auer Avenue to pray for peace before heading to her new temporary job in West Bend, Wisconsin.

40.     However, when she arrived in the area she noticed the heavy police presence and decided instead to walk west on Burleigh Street, a long block south of Auer Avenue, to her children's grandparents house on North 46th Street near Burleigh.

41.     As Ms. McGowan was walking, an unknown female police officer, whom she believed was approximately five feet, four inches tall with her hair in a ponytail, approached and told her she could not be in the area.

42.     When Ms. McGowan asked how she could get to 46th and Burleigh, another police officer, upon information and belief Defendant Kittock or Hernandez, grabbed her and handcuffed her.

43.     Ms. McGowan asked to see a supervisor.  When she asked the unknown male supervisor, an older white male, why she had been arrested, the unknown male supervisor said, in substance, it was because of "unrest" or "unlawful assembly."

44.     Ms. McGowan did notice police officers on the steps of a house across the street, but did not see any crowd or disturbance.

45.     After her arrest, Ms. McGowan was placed in a police van with other people arrested and, after a time, taken to the police station downtown.

46.     She was held at the police station for more than two hours, much of the time with the handcuffs still digging painfully into her skin and wrist joint.

47. When she was finally released with a disorderly conduct ticket, it was too late to make it to her new job, which she lost in part because of a no-show, no-call caused by the arrest and detention.

48. Ms. McGowan suffered lasting physical pain and tingling in her wrists as a result of the arrest. Because of pain and continued numbness in her left wrist, she sought medical care a week later.

49. Ms. McGowan also suffered substantial emotional distress from the arrest. She felt helpless and had nightmares for a while. She felt humiliated, in part because she had always held herself out as a law-abiding person who had never had any run-ins with the police. This self-conception was important to her reputation at her church and with the youth she counseled in her daytime job. She feared she would lose her job as a result of the ticket. She sought counseling from a church member and a friend who was a counselor.

50. The disorderly conduct charge was dismissed by Municipal Judge Chavez on January 4, 2017.

## FIRST CLAIM FOR RELIEF
### (Violation of Plaintiffs' Fourth Amendment Rights to be Free from Unlawful Arrest)

51. All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

52. The Defendants' arrest and detention of Plaintiffs English and McGowan were unjustified and unreasonable seizures of their persons.

53. Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

54.     While acting under color of state law, Defendants named in their individual capacity deprived Plaintiffs of their Fourth Amendment rights, for which Plaintiffs are entitled to damages proximately caused thereby.

## SECOND CLAIM FOR RELIEF
### (Violation of Plaintiffs' Fourth Amendment Rights to be Free from Excessive Force)

55.     All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

56.     The Defendants' use of force to effectuate the arrests of Plaintiffs English and McGowan were unjustified and unreasonable.

57.     Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

58.     While acting under color of state law, Defendants named in their individual capacity deprived Plaintiffs of their Fourth Amendment rights, for which Plaintiffs are entitled to damages proximately caused thereby.

## THIRD CLAIM FOR RELIEF
### (Policy and Practice of Arrests for Unlawful Assembly in Violation of First and Fourth Amendment Rights)

59.     All paragraphs of this Complaint are realleged and incorporated as though fully set forth.

60.     The policy or practice of the Defendants City of Milwaukee, Morales and Harpole of ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those who fail to immediately comply is unreasonable and unjustified and interfered with Plaintiffs' First Amendment rights of association and ability to record and report their observations.

61.    Defendants City of Milwaukee, Morales and Harpole in implementing the policy and practice of ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those who fail to immediately comply place Plaintiffs, and others similarly situated, at continuing and foreseeable risk of being arrested for exercising their First Amendment right of association and Fourth Amendment right to be free from excessive force and will not cease without injunctive relief.

62.    Defendants' actions were taken in willful, wanton, reckless and malicious disregard of the Plaintiffs' constitutional rights, for which Plaintiffs have suffered injury.

63.    While acting under color of state law, Defendants City of Milwaukee, Morales and Harpole deprived Plaintiffs of their First and Fourth Amendment rights, for which Plaintiffs are entitled a declaration that the policy or practice is unlawful and an injunction against that policy or practice.

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Compensatory and/or nominal damages in an amount to be determined at trial;

B.    Punitive damages in an amount to be determined at trial;

C.    A declaration that the City's policy or practice of declaring unlawful assemblies and ordering dispersal of persons not participating in unlawful activity violates the First and Fourth Amendments;

D.    An order enjoining Defendants City of Milwaukee and Morales from enforcing a policy ordering dispersal of people peacefully observing or passing by an allegedly unlawful assembly and then arresting those who fail to immediately comply;

E.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

F.    All other relief the Court deems just.

PLAINTIFFS REQUEST A TRIAL BY A JURY ON ALL CLAIMS.

Dated this 24th day of May, 2019.

> **AMERICAN CIVIL LIBERTIES UNION OF WISCONSIN FOUNDATION**
> *Counsel for Plaintiffs,*
>
>
> By: */s/ Laurence J. Dupuis*
> Laurence J. Dupuis, State Bar No. 1029261
> Email: ldupuis@aclu-wi.org
> Asma I. Kadri, State Bar No. 1114761
> Email: akadri@aclu-wi.org
> ACLU of Wisconsin Foundation
> 207 East Buffalo Street, Suite 325
> Milwaukee, Wisconsin 53202
> Telephone: (414) 272-4032
>
> **STEVEN A. PORTER**
> *Counsel for Plaintiffs,*
>
> By: */s/ Steven A. Porter*
> Steven A. Porter, State Bar No. 1000195
> Email: asp5949@gmail.com

13