IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

BENETRIA McGOWAN and
JARRETT ENGLISH,

                              Plaintiffs,

-vs-                                                     Case No. 19 CV 781

CITY OF MILWAUKEE, et al.,

                              Defendants.

---

## PLAINTIFFS' PRETRIAL REPORT

---

      Pursuant to this Court's order dated June 13, 2023 (Dkt. 117), Plaintiffs submit this Pretrial Report and attachments.

### I. Case Summary

Plaintiffs Benetria McGowan and Jarrett English filed this action against officers of the Milwaukee Police Department and the City of Milwaukee for unlawful arrest, excessive force, and violations of their First Amendment rights. On the night of August 30, 2016, MPD issued and executed an order to clear an area in Sherman Park where people had been gathering for weeks to mourn and protest the police shooting of Sylville Smith. Police Chief Edward Flynn, at the request of Alderman Khalif Rainey, and with the approval of Mayor Thomas Barrett, intended, and attempted, to disperse those gathered in the Sherman Park neighborhood to mourn and protest the police shooting (Defs.' Br. (Dkt. 79) at 1-2.).

Much later and blocks away from the memorial, officers ordered peaceful, law-abiding citizens, including Mr. English and Ms. McGowan, to depart from public spaces, and then made arbitrary arrests without anything remotely approaching probable cause. Ms. McGowan was walking alone down a public sidewalk on Burleigh Street when an officer demanded that she turn around and leave. Twenty-two seconds later, as she asked the officer why she could not continue on her path, she was arrested and handcuffed without cause. Mr. English was arrested as he walked away from a small group of citizens and public officials, in response to officers' command to disperse. It is undisputed that "[n]either was engaged in any criminal conduct; they simply

1

happened to be in the area when the dispersal orders were issued and were deemed to be noncompliant."[1]

Plaintiffs make three claims: Defendants violated 1) the First Amendment by suppressing Ms. McGowan's and Mr. English's ability to associate and express themselves; 2) the Fourth Amendment by arresting Plaintiffs without individualized probable cause to believe they had violated or were violating the law; and 3) the Fourth Amendment by using excessive force in arresting Plaintiffs. Because MPD officers acted pursuant to the direction of final policy-makers of the City of Milwaukee, the City has direct liability for these deprivations of Constitutional rights.

The only issue for trial is whether these officers can order peaceful persons off public sidewalks and then claim that their failure to instantaneously disappear from the scene materially obstructed the work of the officers. Two specific questions remain. First, whether officers had grounds to issue dispersal orders to Plaintiffs. In other words, did officers "reasonably believe[]" the situation at the time and locations where Plaintiffs were arrested on August 30 involved sufficient "'immediate danger' to warrant the sweeping dispersal actions they carried out."[2] This question turns on the totality of the circumstances known to the officers at the time of the arrests.[3]

The second question remaining is whether officers had probable cause to arrest Plaintiffs. Defendants have presented shifting justifications for arresting Mr. English, and this Court rejected each of those justifications and ruled that Defendants did *not* have probable cause to arrest him for disorderly conduct, public drinking, or loitering.[4] Defendants' only remaining defense for arresting English, and their sole defense for arresting Ms. McGowan, is that Plaintiffs were obstructing an officer, in violation of Wis. Stat. § 946.41.[5]

Plaintiffs also claim that officers used excessive force in arresting them because they used more force than was reasonably necessary under the circumstances. This is especially true because the arrests themselves were unlawful. In such circumstances even "physical touching and other indignities that would be permissible in a lawful arrest"[6] would, by necessity, be excessive.

These unlawful arrests produced significant, compensable damages to the Plaintiffs. Both suffered the indignity and embarrassment of an unlawful deprivation of their constitutional rights. For Mr. English, this indignity, of being forced to the ground and placed into handcuffs was broadcast on the local nightly TV news, a report which remains—and will likely always remain—available on the internet and associated with his name. Both suffered pain from being forcibly handcuffed and then placed into police vans. Ms. McGowan missed work and now

---

[1] *English v. City of Milwaukee*, No. 19-cv-0781-bhl, 2022 WL 3354746, Slip. Op. [Dkt. 97] at 2 (E.D. Wis. Aug. 12, 2022).

[2] *Id*. at 13(citations omitted)

[3] *Id*. at 9.

[4] *Id*. at 9.

[5] *Id*. at 11.

[6] *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043-44 (7th Cir. 2002).

suffers from post-traumatic stress disorder, for which she has required therapy since the time of her unlawful arrest.

Plaintiffs also seek injunctive relief that would ensure that the same injustice does not happen to others. Additionally, Plaintiffs have asked for monetary compensation to cover therapy expenses and punitive damages to deter institutional misconduct.

## II. Witness List

1. **Witness: Jarrett English**
   Summary: His unlawful arrest on August 30, 2016 and its impact on him.
   Estimated Time: one hour

2. **Witness: Benetria McGowan**
   Summary: Her unlawful arrest on August 30, 2016 and its impact on her.
   Estimated Time: one hour

3. **Witness: Jonathan Brostoff**
   Summary: The events and atmosphere in the Sherman Park neighborhood on and before August 30, 2016. His unlawful arrest and the unlawful arrest of Jarrett English on August 30, 2016.
   Estimated Time: one hour

4. **Witness: Dr. Brad Grunert (expert)**
   Summary: His examination and opinion of post traumatic injury suffered by Benetria McGowan.

   Background of expert: Dr. Grunert is a licensed psychologist and professor of psychology with the Medical College of Wisconsin's Departments of Psychiatry and Behavioral Medicine and Plastic Surgery. He is also a clinical assistant professor with the University of Wisconsin Milwaukee's Department of Psychology. He received his Masters Degree in Clinical Psychology from the University of Wisconsin- Oshkosh and his Ph.D. in Educational Psychology from Marquette University in 1981. Dr. Grunert was a postdoctoral fellow at Curative Rehabilitation Services in Milwaukee. He has diagnosed and treated many individuals suffering from post-traumatic stress disorder (PTSD). He has given numerous peer-reviewed presentations and published extensively regarding post-traumatic stress disorder and its treatment, including the use of cognitive-behavioral therapy and imagery rescripting and reprocessing therapies in patients with PTSD. He has given expert testimony by deposition and at trial, for both plaintiffs and defendants, in numerous cases.

   Estimated Time: one hour

5. **Witness: Raymond Brock (adverse)**
   Summary: His leadership of the team of police officers which arrested plaintiffs on the night of August 30, 20216. Police activities in the Sherman Park neighborhood on the night of August 30, 2016. His understanding of any directives to make arrests. The arrest of Jarrett English.
   Estimated Time: 30 minutes

6. **Witness: Rebecca Wallich (*nee* Rodriguez) (adverse)**
   Summary: Police activities in the Sherman Park neighborhood on the night of August 30, 2016. The arrests of plaintiffs on the night of August 30, 2016.
   Estimated Time: 30 minutes

7. **Witness: Nesrodene Ghassoul (adverse)**
   Summary: Police activities in the Sherman Park neighborhood on the night of August 30, 2016. The arrests of plaintiffs on the night of August 30, 2016
   Estimated Time: 30 minutes

8. **Witness: James Harpole (adverse)**
   Summary: Command structure within Milwaukee police department for operations in Sherman Park in August 2016, the orders to clear groups of people from the area near 44th and Auer, communications with Chief of Police and other command staff regarding clearing the area.
   Estimated Time: 45 minutes

   *NOTE: Plaintiffs plan to offer the testimony of the following witnesses through deposition designations, but reserve the right to call them adversely as witnesses.*

9. **Witness: Stephen Basting (by deposition designation or adverse)**
   Summary: Command structure within Milwaukee police department for operations in Sherman Park in August 2016, the orders to clear groups of people from the area near 44th and Auer, communications with Chief of Police and other command staff regarding clearing the area.
   Estimated Time: 15 minutes

10. **Witness: Wade Grubich (by deposition designation or adverse)**
    Summary: Police activities in the Sherman Park area on the night of August 30, 2016. His conversation with Benetria McGowan after her arrest.
    Estimated Time: 15 minutes

11. **Witness: Derrick Harris (by deposition designation or adverse)**
    Summary: Police activities in the Sherman Park area on the night of August 30, 2016. His instructions that a group of persons at Sherman and Auer be dispersed. Whether he observed any illegal activity.

Estimated Time: 15 minutes

12. **Witness: Matthew Palmer (by deposition designation or adverse)**
    Summary: The Internal Affairs investigation of the arrests of Jarrett English and Jonathan Brostoff on the night of August 30, 2016 and the report produced from the investigation.
    Estimated Time: 15 minutes

13. **Witness: Brian Laroque (by deposition designation or adverse)**
    Summary: His participation in and/or observation of the arrests of Benetria McGowan and Jarrett English.
    Estimated Time: 15 minutes

14. **Witness: Andrew Wilkiewicz (by deposition designation or adverse)**
    Summary: Police activities on the night of August 30, 2016. His participation in and/or observation of the arrests of Benetria McGowan and Jarrett English.
    Estimated Time: 15 minutes

III. **Exhibit List**

Plaintiffs' list of exhibits is attached as Exhibit A.

IV. **Deposition Designations**

Plaintiffs sent proposed deposition designations to defendants on June 16, 2022, and asked for objections and/or counter-designations, as specified in this Court's June 13 Order. Defendants did not provide objections or counter-designations. Plaintiffs met with Defendants by videoconference the afternoon of June 20, 2022. Defendants' counsel indicated that they were not prepared to provide objections or counter-designations at that time, but would do so by June 26. Plaintiffs' proposed deposition designations are attached as Exhibit B.

V. **Proposed Stipulated Facts**

The parties have stipulated to the set of facts attached as Exhibit C in the trial of this matter.

VI. **Proposed Voir Dire Questions**

1. Do any of you feel that there are too many lawsuits, that people who sue are reaping undeserved windfalls or that people should not sue when they believe police officers have violated their rights?

2. Have any of you been a party to a lawsuit, either as a plaintiff or defendant? (Please follow up regarding the circumstances.)

3. Have any of you ever been arrested? (Please follow up regarding the circumstances).

4. Has someone you know personally ever been arrested? (Please follow up regarding who, and the circumstances).

5. What news sources do you follow regularly?

6. Does anyone have a family member or close friend who is a police officer or law enforcement officer? (Please follow up regarding who, and the details of this employment).

7. Has anyone ever been stopped by the police for any reason, including for something like speeding or having a taillight out? (Please follow up with a brief description).

8. Has anyone on the panel been poorly treated by police or law enforcement? (Please follow up regarding the circumstances).

9. Does anyone support an organization that supports or criticizes law enforcement?(Please follow up regarding what organization, and the potential juror's involvement in that organization).

10. Have any of you heard of the American Civil Liberties Union? What do you know about it? Do you have any views on the positions the ACLU takes?

11. Do any of you avoid certain parts of Milwaukee? (What parts and why?)

12. Do any of you have one or more bumper stickers on your car? (What do the bumper stickers say?)

13. Do any of you currently have a yard sign or flags flying in your yard? (What do those signs say? What kind of flags?)

14. Does anyone believe there are just too many protests these days or that protests are allowed to continue for too long?

15. Does anyone have any training in the law?

16. Some people think the police are almost always right. Some people think the police are almost always wrong. I'd like to know which you are a little closer to. May I see the hands of those closer to the people who believe that the police are almost always wrong? Now the hands of those who are a little closer to those who believe that the police are almost always right?

17. Some people think that even though the government makes mistakes and arrests the wrong person and some law enforcement officers use more force than necessary, that is the price we have to pay to be safe. Do you agree with that belief?

18. Do any of you believe that people would not have any problem with the police if they just did as they were told by police?

19. In general, would you be more inclined to believe someone who is involved with law enforcement over somebody who was not?

20. Have you ever donated to any law enforcement organization?

21. In the video you watched, the concept of unconscious bias was defined and discussed. Does anyone think you will be unable to decide the case fairly and impartially and or be unable to be mindful of the potential effects of any biases you may have -- explicit or implicit? Please explain.

22. Some of the witnesses, parties, lawyers, jurors, or other people involved with this case may have personal characteristics (such as their race, ethnicity, or religion) or backgrounds different from yours, or they may be similar to yours. Would those differences or similarities make it difficult for any of you to decide this case impartially based solely on the evidence and the law? Please explain.

23. The plaintiffs Benetria McGowan and Jarrett English identify as Black. Is there anyone who believes, even a little, that Black people are less likely to tell the truth than a white person?

24. Is there anyone who believes, even a little, that Black people's rights matter less or are less worthy of protection than those of a white person?

25. Is there anyone who believes, even a little, that Black people today are too sensitive and too ready to complain that their rights have been violated?

26. Does anyone believe, even a little, that a public gathering of Black people is more suspicious or dangerous than a gathering of white people?

27. If, after you hear all of the evidence and are instructed as to the applicable law in this case, you decide that the City of Milwaukee unlawfully deprived either of the plaintiffs of his or her Constitutional rights will you be open to awarding money damages to that plaintiff as compensation for his or her injuries, if the injuries are proven?

28. Are there any facts or circumstances you believe the Court or the parties should know about that might affect your ability to serve as a fair and impartial juror in this case?

29. Does anyone have any physical problems, business or personal commitments, or any other reason that would prevent you from sitting as jurors and giving your full, fair and impartial attention to this case over the course of this trial?

## VII. Proposed Jury Instructions

Plaintiffs propose that the Court use the jury instructions attached as Exhibit D, in addition to its standard instructions. Plaintiffs have also included jury instructions from *Barnes v. Wis. Dep't of Corr.*, No. 18-cv-00105-jdp, Introductory Jury Instr. (Doc. 82) at 3, cited in Proposed Instruction No. 2, as Exhibit E.

## VIII. Proposed Verdict Form

Plaintiffs propose that the Court use the verdict form attached as Exhibit Exhibit F.

7

Dated this 20th day of June, 2023.

AMERICAN CIVIL LIBERTIES UNION OF WISCONSIN FOUNDATION and
A. STEVEN PORTER

AMERICAN CIVIL LIBERTIES UNION OF
WISCONSIN FOUNDATION, INC.
By: /s/ Laurence J. Dupuis
R. Timothy Muth
State Bar No. 1010710
Emma Shakeshaft
State Bar No. 1092046
Laurence J. Dupuis
State Bar No. 1029261
Chris Donahoe
State Bar No. 1092282
*Attorneys for Plaintiffs*
207 E. Buffalo Street, Room 325
Milwaukee, Wisconsin 53202
(414) 272-4032
(414) 272-0182 (fax)
cdonahoe@aclu-wi.org
ldupuis@aclu-wi.org
eshakeshaft@aclu-wi.org
tmuth@aclu-wi.org

A. Steven Porter
State Bar No. 1000195
*Attorney for Plaintiffs*
P.O. Box 7093
Madison, Wisconsin 53707
(608) 662-2285
(608) 819-6466 (fax)
asp5949@gmail.com